**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dale Langford,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Bell Motors LLC, et al.,<br><br>　　　　　Defendants. | No. CV-16-02930-PHX-DGC<br><br>**ORDER** |

Plaintiff Dale Langford filed a complaint against Defendant Bell Motors LLC for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Doc. 1-1. Defendant moves for summary judgment on all claims (Doc. 37), and Plaintiff moves for summary judgment on Defendant's *Faragher/Ellerth* affirmative defense (Doc. 39). The motions are fully briefed, and no party requests oral argument. For the reasons that follow, the Court will deny both motions.

**I.　Background.**

Plaintiff worked as a car salesman at Defendant's dealership from February to October 2013. Doc. 46-1 at 20. This position required him to "[p]rospect on a day-to-day basis by phone[.]" Doc. 38 at 6. In practice, supervisors asked salesmen to contact prospective customers approximately every three days. Doc. 46-1 at 13.

Plaintiff is a Baptist who believes that Sunday is a day of rest for all people. Doc. 46 at 6. Plaintiff chose to work on Sunday because of his financial need, but believed he should not interrupt others' observance of the day of rest. Doc. 46-2 at 2-3. For that reason, Plaintiff refused to make unsolicited sales calls on Sundays, although he would place calls to persons who requested them. Doc. 38 at 29.

On Sunday, September 1, 2013, desk manager Neil Lyons told Plaintiff and other salesmen to make unsolicited calls to prospective customers. Doc. 38 at 1-2; Doc. 46 at 6-7. Plaintiff protested that he would not "harass" people on a Sunday. Doc. 46-1 at 24-27.[1] Mr. Lyons expressed frustration and left to get the general sales manager, Frank Stevens. Doc. 46 at 7. Minutes later, Mr. Stevens arrived and stated something to the effect of "I do not give a f--- about your religion. Get on the phones, or you are fired." Doc. 38 at 18; Doc. 46-1 at 27. Plaintiff continued to refuse. Doc. 38 at 19. Intending to file a complaint, Plaintiff called Human Resources specialist Janice Jordan later that day. Doc. 46 at 7. He left a voicemail requesting a call back about an interaction with his supervisor that morning. Doc. 46-4 at 3-4. Another salesman who joined in Plaintiff's protest left a voicemail for Human Resources as well. Doc. 40-4 at 25-27.

At all times relevant to this case, Defendant had an anti-discrimination policy that provided multiple avenues to report harassment and required Human Resources to investigate complaints. Doc. 44-1 at 40-73. This policy required Human Resources to treat complaints as confidential to the extent reasonably possible. Doc. 40-4 at 19-20. And it provided for different methods of resolution depending on the nature and severity of the complaint. *Id.* at 17-18, 22. For routine personnel conflicts, Human Resources could rely on local management to resolve the issue. *Id.* But for more severe complaints of discrimination, a Human Resources specialist would escalate the complaint to her own

---

[1] For purposes of this decision, the Court has not considered Plaintiff's alleged statement as described in his Equal Employment Opportunity Commission charge. *See* Doc. 47 at 3 n.1. The Court nonetheless notes that considering it would not change its decision. Mr. Stevens's response reveals that he understood that Plaintiff's objection was religion-based.

management. *Id.* In those cases, Human Resources would encourage the complainant to report any acts of retaliation for his complaint. *Id.* at 45.

Ms. Jordan never returned the calls of Plaintiff or his co-worker to determine the nature of their complaints, their severity, or the need for confidentiality. Doc. 40-4 at 34-35; Doc. 46-4 at 5. She did alert general manager Eric Zimmerman about the voicemails. Doc. 40-4 at 30. On Tuesday, September 3, Mr. Zimmerman and Mr. Stevens met with Plaintiff to discuss his call to Human Resources. Doc. 46 at 7. They directed Plaintiff to raise any future issues with them, not Human Resources. *Id.*; Doc. 38 at 13, 26-27. When Ms. Jordan visited the dealership later that day, Mr. Zimmerman told her that he had handled the situation. Doc. 40-4 at 31-32. She did not follow up with Plaintiff to encourage him to report any acts of retaliation. *Id.* at 46.

Soon after the September 3 meeting, Mr. Stevens allegedly belittled Plaintiff, in front of a co-worker, for Plaintiff's assertion that his Associate's and Bachelor's degrees in theology qualified him to be an ordained minister. Doc. 46 at 7-8; Doc. 46-5 at 18.

Later that month, Plaintiff helped a prospective customer who wanted to trade his 2012 Jeep for a 2007 Audi, which would have been a favorable deal for Defendant. Doc. 46-2 at 7. Yet Mr. Stevens refused to approve the deal when Plaintiff sought his authorization. Doc. 46-5 at 10. Approximately two days later, the same customer initiated and closed the same deal with the internet sales team. *Id.* Although it was customary for sales representatives to share commissions with those who helped work a deal, Plaintiff did not receive – nor did he request – a share in the commission. Doc. 38 at 3; Doc. 46 at 8; Doc. 46-2 at 16-17.

On September 24, 2013, Plaintiff was helping a first-time car buyer who was interested in purchasing a truck for an advertised sale price of $9,392. Doc. 46-5 at 12. Plaintiff sought Mr. Stevens's approval of the deal, but Mr. Stevens directed Plaintiff to make an offer of $14,177.82 instead. *Id.*; Doc. 46 at 9. The increased price reflected some reasonable dealership fees, but also included two charges that Plaintiff characterizes as inflated: (1) the base price was set at $9,991, not the sale price; and (2) the fee for a

tracking device was set at $1,999, but Plaintiff usually sold this device for $299 or $399. Doc. 46-2 at 19-29. When Plaintiff protested, Mr. Stevens admonished him to "get out and do your job." Doc. 46-5 at 12. When Plaintiff communicated the adjusted price, the buyer laughed and rejected it. Doc. 46-2 at 26-27. The buyer offered to purchase the truck for the sale price, but asked that the tracking device and window tint (valued at $299) be removed. *Id.* at 24, 27-29. Even without those features, Mr. Stevens refused to reduce the price from $14,177.82. *Id.* at 28-29. The buyer left the dealership without making a deal. *Id.* at 29.

On September 28, 2013, Mr. Stevens asked Plaintiff to come to his office to meet with him and Plaintiff's direct supervisor, Floyd Brown. Doc. 46-5 at 12, 18. Mr. Stevens accused Plaintiff of attempting to persuade one of Defendant's customers to purchase a vehicle from a competing dealership where Plaintiff would soon work. Doc. 46-5 at 12-13. Mr. Stevens presented Plaintiff with a resignation letter and insisted that he sign it before the end of the day. Doc. 46-5 at 13, 18. Although Plaintiff admitted to searching for other work, he denied the accusations and refused to resign. *Id.*

On October 1, 2013, Plaintiff informed Mr. Stevens over the telephone that he quit. Doc. 46-2 at 5. Mr. Stevens allegedly threatened to withhold Plaintiff's last paycheck if he did not come to the dealership to sign a resignation letter. *Id.* Plaintiff resigned his position on October 1, 2013. Doc. 46-1 at 20.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Discussion.**

Plaintiff alleges three Title VII discrimination claims against Defendant: failure to accommodate, hostile work environment, and constructive discharge. Doc. 1-1 at 10-13. Plaintiff also asserts a Title VII retaliation claim. *Id.*

### A. Plaintiff's Discrimination Claims.

The Ninth Circuit analyzes Title VII discrimination claims under a two-part framework:

> Under the first part, [Plaintiff] must establish a prima facie case by showing that: (1) he had a bona fide religious belief, the practice of which conflicted with his employment duties . . . ; (2) he informed [Defendant] of his beliefs and the conflict; and (3) [Defendant] threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements. Once an employee establishes a prima facie case, the burden of proof then shifts to the employer under the second part of the framework to establish that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.

*Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (internal quotation marks and citations omitted); *see also Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006).

#### 1. Bona Fide Religious Belief.

Bona fide religious beliefs "include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1. Defendant contends that Plaintiff's belief against making unsolicited sales calls on Sunday is neither sincere nor religious. Doc. 37 at 5.

Defendant argues that Plaintiff's willingness to make outbound calls on Sunday for a previous employer establishes that his belief is insincere. Doc. 37 at 6. Although

Plaintiff admitted to making outbound calls for a prior employer (Doc. 38 at 10-11), he represented that he never made *unsolicited* outbound calls on Sunday for the prior employer (Doc. 46-5 at 8). Defendant also argues that Plaintiff's willingness to work, receive calls, and make solicited calls on Sunday is inconsistent with his alleged belief. Doc. 37 at 6. Plaintiff explained that he would interrupt his own day of rest due to the necessity of earning a living, but he refused to interrupt that day for others. Doc. 38 at 29; Doc. 46-2 at 2-3. These disputes of material fact prevent summary judgment on the sincerity of Plaintiff's belief.

Defendant next argues that Plaintiff's belief is not religious because he cannot prove that the Baptist faith espouses this belief. Doc. 37 at 5. Plaintiff counters that he need not make such a showing (Doc. 45 at 3-4), and the Court agrees. "The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee." 29 C.F.R. § 1605.1.

### 2. Notification to Employer.

Plaintiff concedes that he never made a formal request for a religious accommodation. Doc. 46 at 2. Defendant contends that Plaintiff's failure to make such a request means that it was never notified of his religious conflict. Doc. 37 at 4. But an employee need not explicitly ask for an accommodation. *Lawson*, 296 F.3d at 804. "[A]n employee need only inform his employer about his religious needs for the employer to understand the conflict between the employer's expectations and the employee's religious practices." *Id.* (citing *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993)). The employee must convey "only enough information about [his] religious needs to permit the employer to understand the existence of a conflict between [his] religious practices and the employer's job requirements." *Heller*, 8 F.3d at 1439.

The record reflects that Plaintiff conveyed to his supervisors that he did not want to harass people with unsolicited calls on a Sunday. The general sales manager appears to have understood that this conflict was religion-based because he used disrespectful

language to describe how little he cared about Plaintiff's religion. The Court cannot conclude as matter of undisputed fact that Defendant was not notified of Plaintiff's religious belief.

### 3. Failure to Accommodate.

Defendant contends that Plaintiff's failure to accommodate claim must fail because Plaintiff did not notify it of a conflict caused by a bona fide religious belief. *See* Doc. 37 at 4-5. For the reasons discussed above, this argument cannot support summary judgment.[2]

### 4. Hostile Work Environment.

To prevail on his hostile work environment claim, Plaintiff must show that (1) he was subjected to verbal or physical conduct because of his religion, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002); *see Knickmeyer v. Nevada*, No. 16-15740, 2017 WL 5494029, at *1 (9th Cir. Nov. 16, 2017) (referencing the *Kang* elements). In assessing severity, courts look at all the circumstances, "including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998); *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001) (internal quotation marks omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

---

[2] Defendant argues for the first time in its reply brief that it accommodated Plaintiff's religious belief because Plaintiff was not forced to make unsolicited calls on Sundays. Doc. 47 at 3. The Court will not consider arguments raised for the first time in a reply brief. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

- 7 -

amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal quotation marks omitted).

Defendant asserts that there was only one isolated incident of disrespect on September 1. Doc. 37 at 7. Noting that Title VII is not a civility code, Defendant argues that isolated incidents are not sufficiently severe or pervasive to sustain a hostile work environment claim. *Id.*; Doc. 47 at 5-6.

Plaintiff responds by citing a number of harassing incidents: the September 1 belittling of his religious beliefs by Mr. Stevens, a derogatory comment on the same day by a desk manager, the fact that Mr. Stevens later belittled Plaintiff's religious educational qualifications, the fact that Mr. Stevens caused Plaintiff to miss two commissions in two separate transactions, and the fact that Mr. Stevens pressured Plaintiff to resign. Doc. 45 at 7, 9. Although the Court finds this to be a close case, it cannot conclude that a reasonable jury necessarily would find these incidents insufficient to alter the conditions of Plaintiff's employment and create an abusive work environment. *Kang*, 296 F.3d at 817.

Cases cited by Defendant do not require a different result. Doc. 47 at 5-6. *Williams v. Arrow Chevrolet, Inc.*, 121 F. App'x 148 (7th Cir. 2005), involved only two instances of religious harassment. *Id.* at 150-51. *Bourini v. Bridgestone/Firestone North American Tire, LLC*, 136 F. App'x 747 (6th Cir. 2005), involved eight instances, but they were spread out over five years and the court found them insufficient because they were "relatively infrequent and isolated." *Id.* at 751. Here, the incidents identified by Plaintiff occurred in about one month. Finally, the court in *Mills v. PeaceHealth*, 31 F. Supp. 3d 1099 (D. Or. 2014), found that comments from co-workers were either misunderstood or involved political discussions regarding the Middle East, and that the supervisor's comments about conversion to Christianity were primarily responses to the plaintiff's comments about Catholics. *Id.* at 1117.

At summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's

favor." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1127 n.1 (9th Cir. 2017) (internal quotation marks omitted). Doing so, the Court concludes that factual issues prevent summary judgment on the hostile work environment claim.

### 5. Constructive Discharge.

"[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). The Ninth Circuit "set[s] the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Id.*

"Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury." *Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007) (internal quotation marks omitted). The Ninth Circuit has held that a constructive discharge claim can be shown through a continuous pattern of discriminatory treatment over months and years. *See Satterwhite v. Smith*, 744 F.2d 1380, 1382-83 (9th Cir. 1984) (evidence that a black employee could not obtain promotion or gain access to training and advancement opportunities that white employees received was sufficient to support a claim of constructive discharge); *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361-62 (9th Cir. 1987) (an alleged pattern of discriminatory actions by an employer was sufficient to survive a motion for summary judgment). For reasons explained above with respect to the hostile work environment claim, the Court concludes that Plaintiff has created a question of fact on whether a reasonable person in his position would have felt forced to quit because of intolerable working conditions.

## B. *Faragher/Ellerth* Affirmative Defense.

Defendant asserts an affirmative defense pursuant to the Supreme Court's decisions in *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (collectively, *Faragher/Ellerth*). Doc. 10 at 8-9. The Ninth Circuit has explained:

> Under *Faragher/Ellerth*, when an employee has been subjected to an unlawful "tangible employment action" by a supervisor, the employer may be held liable without more; when the employee has been unlawfully harassed, but there has been no "tangible employment action," the employer may avoid liability by proving the defense of "reasonable care."

*Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir. 2003).

Defendant contends that Plaintiff suffered no tangible employment action. Doc. 37 at 8. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Plaintiff argues that three incidents meet this standard: his constructive discharge and two lost commissions. Doc. 45 at 9. The Court agrees. Plaintiff has presented enough evidence to create a question of fact on constructive discharge. And Plaintiff has testified that Mr. Stevens used his managerial authority to cause two of Plaintiff's vehicle sales to fail, thus reducing his compensation. Defendant disputes this allegation, but has not established that the lost commissions would be so insignificant as to preclude a finding that they are tangible employment actions affecting his compensation. The Court finds a dispute of material fact as to whether there was a "tangible employment action."

In his separate motion for partial summary judgment, Plaintiff asks the Court to prevent Defendant from relying on the *Faragher/Ellerth* defense even in the absence of a tangible employment action. Doc. 39 at 8. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take

advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765.

Plaintiff contends that Defendant cannot establish that it acted reasonably. Doc. 39 at at 9-12. Plaintiff emphasizes that Defendant had a clear anti-discrimination policy, yet its Human Resources specialist failed to investigate Plaintiff's complaint in accordance with that policy. *Id.* She never returned Plaintiff's request for a telephone call. *Id.* at 11. Unaware of the nature of the complaint, Ms. Jordan chose instead to ask local management to handle the situation. *Id.*

Defendant counters that the mere existence of its comprehensive anti-discrimination policy establishes that it acted reasonably. Doc. 43 at 4-5. Defendant argues that this is the dispositive fact because Plaintiff never filed a complaint about Mr. Stevens that would have triggered an investigation pursuant to its policy. *Id.* at 5. Defendant further argues that it nonetheless addressed Plaintiff's voicemail at a meeting on September 3. *Id.* Because Plaintiff did not file any more complaints, Defendant argues, this meeting successfully stopped any discrimination or harassment. *Id.*

The Court finds disputes of material fact as to whether Defendant exercised reasonable care in the implementation of its anti-discrimination policies. Defendant relies on cases from another circuit for the proposition that the mere existence of a policy is sufficient to show reasonableness. Doc. 43 at 5. The Ninth Circuit has found that the existence of such a policy is relevant, but not determinative. *See Nichols*, 256 F.3d at 877-78. In *Nichols*, the Ninth Circuit held that a company exercised reasonable care to *prevent* sexual harassment with its company-wide policy and training program. *Id.* at 877. But the court found it unreasonable that the employer failed to implement its policy to *correct* harassing behavior. *Id.* at 877-78. This distinction requires a resolution of material facts related to Ms. Jordan's response. A reasonable jury could find that the two voicemails conveyed a routine personnel complaint that warranted a deferral to local management, but the same jury might find that Ms. Jordan acted unreasonably by failing

to determine the nature of the issue before revealing it to Mr. Zimmerman. The Court cannot determine at this stage whether Defendant acted unreasonably.

Plaintiff next argues that Defendant cannot establish that he acted unreasonably. Doc. 39 at 13. Specifically, Plaintiff contends that his voicemail for Human Resources precludes any attempt to establish that he unreasonably failed to take advantage of preventative or corrective opportunities. *Id.* Defendant counters that Plaintiff acted unreasonably because his voicemail was too vague to constitute a serious complaint, and he failed to use alternative reporting channels when his initial voicemail was unanswered. Doc. 43 at 6-7. The Court also finds disputes of material fact as to whether Plaintiff acted reasonably.

The critical issue here is the September 3 meeting with Mr. Zimmerman and Mr. Stevens. Defendant characterizes it as a respectful effort to address and rectify Plaintiff's concerns, but Plaintiff characterizes it as an interrogation in which he was told not to contact Human Resources again. Depending on its resolution of this issue, a reasonable jury could find that Plaintiff unreasonably failed to file an additional complaint with Human Resources. The Court will not displace the decision of a jury on this issue.

### C. Retaliation.

Title VII prohibits retaliation against an employee for opposing an unlawful employment practice or participating in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). A successful retaliation claim must establish that (1) the employee engaged in a protected activity, (2) the employer took an adverse employment action against the employee, and (3) the employer would not have taken the adverse employment action but for a design to retaliate. *Nilsson v. City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (clarifying that employee must show "but for" causation).

#### 1. Protected Activity.

An employee engages in a "protected activity" when the he complains about or protests conduct that he reasonably believes constitutes an unlawful employment

practice. *See* 42 U.S.C. § 2000e-3(a) (describing "protected activity"); *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). Defendant contends that Plaintiff never engaged in such activity. Doc. 37 at 9-10. Specifically, Defendant argues that even if Plaintiff made a request for accommodation, that request is legally insufficient to constitute a complaint or opposition to discriminatory conduct. *Id.* Plaintiff counters that the express refusal to carry out a discriminatory policy constitutes protected activity under Title VII. Doc. 45 at 11-12. The Court agrees with Plaintiff. When he openly protested Mr. Stevens's order to make unsolicited calls on a Sunday, he protested conduct that he believed to be an unlawful employment practice. *See Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) ("Opposition can, of course, consist of a refusal to carry out an order or policy."). A reasonable jury could find that this was protected activity.[3]

### 2. Adverse Employment Action.

Title VII's anti-retaliation provision protects against "materially adverse" employment actions – actions that might dissuade a reasonable worker from making or supporting a charge of discrimination – but not against "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Court's role at the summary judgment stage is limited to determining whether there is evidence in the record that would support a reasonable jury in finding that the action complained of was materially adverse. Where the evidence would permit no such finding, the Court may grant summary judgment. *See, e.g.*, *Johnson v. Fed. Express Corp.*, No. CV-14-02428-PHX-DGC, 2016 WL 1593811, at *4 (D. Ariz. Apr. 21, 2016) (citing *Sillars v. Nevada*, 385 F. App'x 669, 671 (9th Cir. 2010) (affirming grant of summary judgment because employee "presented no evidence that the position to which she was moved differed in any material way from the position she occupied prior to her complaints")). In determining whether a reasonable jury could find material adversity, the Court must consider the context in

---

[3] Defendant's motion does not address, and the Court does not consider, whether Plaintiff's attempt to contact Human Resources constitutes protected activity for the purposes of Title VII.

- 13 -

which the action occurred. Because "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships . . . an act that would be immaterial in some situations is material in others." *White*, 548 U.S. at 69 (internal quotation marks and citations omitted).

Defendant offers a bare assertion that Plaintiff did not suffer any adverse employment action because he was neither disciplined nor terminated. Doc. 37 at 10. In response, Plaintiff identifies at least three instances of adverse action: (1) Mr. Stevens inexplicably refused to authorize the trade-in deal, depriving Plaintiff of a commission; (2) Mr. Stevens inflated the offer price for a truck, ruining a deal and depriving Plaintiff of a commission; and (3) Mr. Stevens demanded that Plaintiff resign or risk losing his final paycheck. Doc. 45 at 13, 15.

The Ninth Circuit has held that decreased compensation can be an adverse employment action. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002) (reduction in monthly pay is an adverse employment action). And the Court finds that pressuring an employee to resign – or risk losing his pay – can likewise be an adverse employment action because it communicates that an involuntary termination may be imminent. In short, the Court holds that a reasonable jury could find that the aforementioned incidents, as well as Plaintiff's potential constructive discharge, might dissuade a reasonable worker from making or supporting a charge of discrimination.[4]

### D. Punitive Damages.

Under Title VII, a plaintiff may recover punitive damages if he demonstrates that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The focus is on the defendant's state of mind. *Christopher v. Spectra Elec. Servs., Inc.*, 637 F. App'x 383, 384 (9th Cir. 2016).

---

[4] Defendant argues for the first time in its reply that Plaintiff has not established "but for" causation for the alleged retaliation. Doc. 47 at 8-10. The Court will not consider this argument. *Gadda*, 511 F.3d at 937 n.2.

- 14 -

Defendant contends that Plaintiff cannot meet this standard because he never made a religious accommodation request, he filed no complaints, he was not subject to adverse employment actions, and he voluntarily resigned. Doc. 37 at 11. Plaintiff argues that Mr. Stevens's disrespectful comments and retaliatory behavior are sufficient to create an issue of material fact because they reveal the intent with which Defendant discriminated. Doc. 45 at 15-16.

The Court agrees with Plaintiff. In *EEOC v. Wal-Mart Stores, Inc.*, 156 F.3d 989 (9th Cir. 1998), the Ninth Circuit emphasized the importance of two facts in finding that punitive damages were available. *Id.* at 992-93. First, the Ninth Circuit noted that a supervisor who had received anti-discrimination training and a handbook nonetheless told a pregnant woman that she would not be hired because of her pregnancy. *Id.* at 992. Similarly here, Defendant has an anti-discrimination policy, yet general sales manager Stevens still declared that he did not "give a f--- about your religion." Second, the Ninth Circuit noted that Wal-Mart managers attempted to cover up the discriminatory conduct. *Id.* at 993. Here, Plaintiff presents evidence that his supervisors directed him not to contact Human Resources about any issues in the future. A reasonable jury could find facts to support the malice or reckless indifference required for punitive damages.

**IT IS ORDERED**:

1. Defendant's motion for summary judgment (Doc. 37) is **denied**.
2. Plaintiff's motion for partial summary judgment (Doc. 39) is **denied**.
3. The Court will schedule a conference call to set a final pretrial conference and trial date by separate order.

Dated this 9th day of January, 2018.

_____
David G. Campbell
United States District Judge